Eaton Corporation, Appellant *v.* Unemployment Compensation Board of Review of the Commonwealth of Pennsylvania, Appellee. Carol J. Walton, Intervening Appellee.

Argued October 7, 1976, before Judges MENCER, ROGERS and BLATT, sitting as a panel of three.

*Frank E. Hahn, Jr.*, with him *James T. Lynn, III*, and *Obermayer, Rebmann, Maxwell & Hippel*, for appellant.

*Daniel R. Schuckers*, Assistant Attorney General, with him *Sydney Reuben*, Assistant Attorney General, and *Robert P. Kane*, Attorney General, for appellee.

*David H. Kubert*, for intervening appellee.

OPINION BY JUDGE ROGERS, October 28, 1976:

Eaton Corporation has appealed from a decision of the Unemployment Compensation Board of Review granting benefits to a former employee, Carol J. Walton. Ms. Walton has intervened.

A history of the proceedings from March 8, 1972, when the Bureau of Employment Security first ruled that Ms. Walton was not entitled to benefits, until August 7, 1975 when this Court remanded the matter to the Unemployment Compensation Board of Review for the second time may be found at *Unemployment*

*Compensation Board of Review and Eaton Corporation v. Carol J. Walton,* Appellant, 21 Pa. Commonwealth Ct. 47, 343 A.2d 70 (1975). In the case cited we required the Board to provide detailed findings and that it redetermine the case in the light of such findings. The Board then heard oral argument, reconsidered the record and made the following pertinent findings of fact.

1. Claimant was last employed as a programmer by the Eaton Corp. at a final rate of $800 per month and her last day of work was February 16, 1972.

. . . .

3. On the morning of February 16, 1972, claimant was asked by her supervisor, Mr. Binns, to analyze a program which he had completed. Claimant declined to perform the analysis as requested because she felt that the request made of her was outside the scope of her job description.

4. Claimant discussed with Supervisor Binns her reasons for declining to perform the program analysis, stated that she would not do the assignment, left the supervisor's office and returned to her desk.

5. Supervisor Binns engaged the claimant at her desk in the presence of other office workers and, in a raised voice, rekindled the dispute over the program analysis assignment; therefore, the claimant began to cry.

6. Claimant, visibly upset as a result of the disagreement with Supervisor Binns, reported to Mr. Spangler in Personnel that she was under medication (prescribed), highly upset and wished a meeting with Management for the purpose of resolving the conflict.

7. Receiving no response from Personnel Manager Spangler, claimant again sought Supervisor

Binns, whom she moments later found in the Personnel office talking with Mr. Spangler.

8. Claimant informed both gentlemen that she was sick, upset and unable to take anymore, and with coat and pocketbook in hand, left the office and went home.

9. After her statements to both gentlemen and prior to leaving the office or the plant, neither Mr. Binns nor Mr. Spangler made attempts to further discuss the issue with the claimant.

10. Upon returning to work the next morning claimant was told by the controller, Mr. Supel, that as of the time of her leaving the plant, the day before, she had been fired for leaving the plant without an exit pass.

11. Company rules dictated that an employee could be terminated for leaving without the required exit pass.

12. The exit pass rule had at times been posted throughout the plant, but the rule was not uniformly applied or strictly enforced.

13. An 'exit pass' was not a tangible written document but rather was usually the act of securing verbal permission from an immediate supervisor to leave the premises.

14. Employes, after having received verbal permission to leave the premises, were not further checked for written evidence of permission to leave the plant during the course of their departure which culminated with the passing of a guard at the plant gate.

. . . .

17. Claimant was never warned that her failure to secure an exit pass would result in termination and claimant was unaware of the exit pass requirement.

The Board concluded, based on these findings, that Ms. Walton had not committed an act of wilful misconduct. This determination was contrary to the decision of the Bureau of Employment Security and two previous decisions by the Board but agreed with the decision of the referee who first heard the case.

It is not necessary for us to cite authorities for the propositions that an employer seeking to justify the discharge of an employee for wilful misconduct has the burden of proof, and that where the findings are against the party having the burden of proof, that party has the further duty, on appeal, to demonstrate that the fact-finders capriciously disregarded competent evidence.

Ms. Walton's two supervisors' description of her departure from work after the dispute with her immediate supervisor on the morning of February 16, 1972, differs sharply from the testimony of Ms. Walton and the Board's findings in the decision and order here appealed from. Their testimony would support findings that Ms. Walton was insubordinate to Mr. Binns, that she was not asked to do work inappropriate to her position, that she was not emotionally overwrought when she left work, and that she left because she was simply and unjustifiably at the time angry. This testimony, if believed, would warrant findings much different from those of the Board. However, the Board believed Ms. Walton's testimony and since her testimony was competent, the Board's acceptance of it was neither capricious nor arbitrary. Further, as the Board's finding indicates, the employer's rules concerning exit passes were somewhat fuzzy. It seems that exit passes were required of persons assertedly leaving on account of physical illness and were obtainable from the plant nurse, but that other persons left the plant for a variety of other

reasons with permission with no such pass. Finally, Ms. Walton testified that when she told her superiors that she was leaving on February 16, 1972, they stood mute, and the Board finally believed her.

ORDER

AND Now, this 28th day of October, 1976, it is ordered that the appeal of Eaton Corporation be and the same hereby is dismissed and the decision of the Unemployment Compensation Board of Review, mailed December 8, 1975, be and the same hereby is affirmed.